UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ELISA DESANTIS,

    Plaintiff,

v.                                                   Case No:   2:16-cv-574-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION AND ORDER**

This cause is before the Court on Plaintiff Elisa Rose Desantis' Complaint (Doc. 1) filed on July 21, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On February 9, 2012, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income asserting an onset date of June 10, 2011. (Tr. at 230, 234). Plaintiff subsequently amended her onset date to July 14, 2012. (*Id.* at 263). Plaintiff's applications were decided initially on April 18, 2012, (Tr. at 67, 80), and upon consideration on October 5, 2012. (*Id.* at 123-124). A hearing was held before Administrative Law Judge ("ALJ") Joseph L. Brinkley on January 6, 2015. (*Id.* at 32-66). The ALJ issued an unfavorable decision on March 6, 2015. (*Id.* at 13-25). The ALJ found Plaintiff not to be disabled under a disability from July 14, 2012, through the date of the decision. (*Id.* at 24-25).

On June 15, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in this Court on July 21, 2016. The Commissioner filed an Answer (Doc. 13) on September 30, 2016. Both parties filed memoranda in support. (Docs. 19, 22). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18). This case is ripe for review.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functioning capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2013. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 14, 2012, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: trapezius muscle spasms with headache pain, cervical and lumbar spondylosis, neuralgia/radiculitis, obesity, and major depression. (*Id.* at 16). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 16-17).

At step four, the ALJ determined that Plaintiff had the residual functioning capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following exceptions:

> [Plaintiff is able to] frequently finger, feel, grasp and handle with bilateral upper extremities; occasionally lift/reach overhead with the upper extremities bilaterally; occasionally climb ramps/stairs, balance, kneel, crouch and stoop; never crawl or climb ladders/ropes/scaffolds; avoid concentrated exposure to wetness, vibration,

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery and uneven terrain; limited to perform simple, routine, repetitive tasks; can understand, remember and complete simple tasks; superficial contact with the general public; occasional working in teams and tandem; and perform low stress work that does not require high volume production quotas and fast paced assembly lines.

(Tr. at 17-18). The ALJ further determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 23).

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 23-24). Specifically, the vocational expert ("VE") testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as: (1) Marker, (2) Router, (3) and Dietary aide. (*Id.* at 24). The ALJ found the VE's testimony to be acceptable and consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT"). (*Id.* at 24, 60). Based on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 24).

Accordingly, the ALJ concluded that Plaintiff was not under a disability from July 14, 2012, through the date of the decision. (*Id.*).

D.    **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1998), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence

4

must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

**II.  Analysis**

Plaintiff argues three issues on appeal:

1.  Whether the ALJ's finding at step five is supported by substantial evidence. Specifically, whether the ALJ adequately accounted for Plaintiff's severe mental impairments when he found that Plaintiff could perform jobs with a reasoning level of two or higher despite her limitation to performance of simple, routine and repetitive tasks.

2.  Whether the ALJ adequately considered Plaintiff's medically determinable impairment of obesity and whether he properly evaluated the impact of that condition in assessing Plaintiff's ability to work, in violation of Social Security Rulings ("SSR") 02-1p and 96-8p.

3.  Whether the ALJ's credibility assessment of Plaintiff is supported by substantial evidence. Specifically, whether the ALJ improperly required objective evidence to substantiate Plaintiff's complaints of pain, whether the ALJ improperly penalized Plaintiff for being unable to afford treatment, and whether the ALJ engaged in "sit and squirm" jurisprudence.

(Doc. 19 at 8-15). The Court addresses each issue in turn.

### A. Whether the ALJ adequately accounted for the severity of Plaintiff's mental impairments at step five

Plaintiff first contends that the ALJ erred at step five of the sequential evaluation. (Doc. 19 at 8). Specifically, Plaintiff argues that "the ALJ did not adequately account for Plaintiff's severe mental impairments when he found that Plaintiff could perform jobs with a reasoning level of two or higher, despite her limitation to performance of simple, routine, and repetitive tasks." (*Id*.). Plaintiff contends that the ALJ had a duty "to question the VE regarding Plaintiff's ability to work with a reasoning level of two or three" and failed to do so. (*Id*. at 10-11). As a result, Plaintiff contends that "the Commissioner has not met her burden of proving by a preponderance of the evidence that there are other jobs available in significant numbers in the national economy that Plaintiff can perform." (*Id*. at 11).

Furthermore, Plaintiff argues that the ALJ's findings that Plaintiff was limited to simple, routine, and repetitive tasks "precludes the performance of complex or detailed tasks and, correspondingly, restricts Plaintiff from carrying out complex or detailed instruction." (*Id*. at 9-10). Plaintiff contends that because "router and marker jobs have a reasoning level of two" and the dietary aide position "has a reasoning level of three," the ALJ had a duty to question the VE over the inconsistency between Plaintiff's mental limitations and the jobs' reasoning levels. (*Id*. at 10-11). Plaintiff further contends because the VE was not questioned, the "testimony cannot be accepted and the ALJ's decision to deny the claim is not supported by substantial evidence." (*Id*.).

The Commissioner disagrees, arguing that the "ALJ properly relied on the testimony of the VE to find that Plaintiff could perform other work." (Doc. 22 at 5). Specifically, the Commissioner states the "ALJ utilized the testimony of the VE and the framework of the Medical-Vocational Guidelines to conclude that a significant number of jobs existed in the

national economy that Plaintiff could perform given her RFC and other vocational characteristics." (*Id*. at 5-6). The Commissioner contends that in accordance with Social Security Ruling 00-4p, the ALJ specifically asked the VE if his testimony was consistent with the DOT, and the VE said that it was. (*Id.* at 6).[2] The Commissioner argues that the ALJ fulfilled his responsibility by asking the VE about any possible conflict and the ALJ was not required to independently investigate the VE's testimony further. (*Id.*). Moreover, the Commissioner argues that Plaintiff's contention that the reasoning level of two or three conflicts with a limitation to simple, routine tasks is incorrect. (*Id*. at 7).

At step five of the sequential evaluation, the burden shifts to the ALJ, and he must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Winschel*, 631 F.3d at 1180. If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

Here, in response to the ALJ's hypothetical containing Plaintiff's impairments, the VE testified he fully understood the hypothetical and that there was no past work available for such an individual. (Tr. at 59). The ALJ then asked if there are other jobs in the regional or national economy for such an individual. (*Id.*). The VE responded that this individual would "[be] able to work as a marker, DOT number 209.587-034. That is a light position, SVP2. . . . The position

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

7

of router, DOT number 222.5878-038. That is a light position, SVP2. . . . And the position of dietary aide, DOT number 319.677-014. That is a light position, SVP2." (*Id.*).[3] The ALJ specifically asked the VE to identify and explain any inconsistencies between his responses and the information in the DOT, and the VE responded, "[m]y testimony has been in accordance with the DOT and the SCO, except for the aspect of overhead reaching, which I based upon my education, training, experience and work history over the last 35 years in this industry placing clients, working with employers and ongoing working [sic] with clients and rehabilitation counselors." (*Id.* at 60). Accordingly, the ALJ concluded that Plaintiff was able to perform other jobs in the national economy. (*Id.* at 24).

Upon review, the Court finds substantial evidence supports the ALJ's decision because the ALJ properly relied on the VE's testimony to determine Plaintiff could perform a significant number of jobs in the national economy. The ALJ specifically included Plaintiff's mental limitation of "simple, routine, repetitive tasks" in the hypothetical question posed to the vocational expert. (*Id.* at 58-59). The ALJ adopted the vocational expert's finding that, in spite of such a limitation, Plaintiff could perform the occupations of marker, router, or dietary aide. (*Id.* at 58-59). Although Plaintiff asserts that the limitation of routine, repetitive tasks conflicts with a reasoning level of two or three, "[m]ost courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks." *Hurtado v. Astrue,* Case No. 09–60930–CIV, 2010 WL 1850261, at *11

---

[3] The VE did not specifically testify as to the reasoning levels of these three (3) positions. (Tr. at 59). However, contained within the definitions for these positions in the DOT are reasoning levels that include a reasoning level of 2 for the positions of marker and router and a reasoning level of 3 for the position of dietary aide. *See* www.occupationalinfo.org/20/209587034.html; http://www.occupationalinfo.org/22/222587038.html; and http://www.occupationalinfo.org/31/319677014.html; (*see also* Doc. 19 at 10).

(S.D. Fla. April 14, 2010) (citing *Miller v. Comm'r of Soc. Sec.,* 246 F. App'x 660, 662 (11th Cir. 2007) (concluding no remand was required where VE identified reasoning level three jobs for a plaintiff who could do only simple, routine, and repetitive work)).[4]

Plaintiff also asserts that the ALJ should be required to go beyond the answer by the VE indicating no conflict with the DOT, and require the vocational expert to explain the reasoning level and Plaintiff's limitation to simple, routine, repetitive tasks. (Doc. 19 at 9). When no apparent conflict exists, neither legal authorities nor SSR 00-4p require an ALJ to go beyond asking the vocational expert if there is a conflict and, when the response is that there is no conflict, require additional investigation. *See Miller*, 246 F. App'x at 662 (holding that "[o]ur precedent establishes that the testimony of a vocational expert 'trumps' an inconsistent provision of the DOT in this Circuit"); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 796 (11th Cir. 2011) (holding that "if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the VE 'trumps' the DOT because the DOT is not the sole source of admissible information concerning jobs"); *Jones v. Comm'r of Social Sec.*, 423 F. App'x 936, 939 (11th Cir. 2011) (citations omitted) (holding "[t]he ALJ was permitted to base his findings . . . exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation"); SSR 00-4p,

---

[4] Although not binding, the Court notes other courts have similarly found that a reasoning level of two or three does not conflict with a limitation to simple, routine, repetitive tasks. *See Terry v. Astrue,* 580 F.3d 471, 478 (7th Cir. 2009) (finding that level three reasoning was not inconsistent with plaintiff's ability to perform only simple work); *Renfrew v. Astrue,* 496 F.3d 918, 921 (8th Cir. 2007) (finding that reasoning level three was not inconsistent with inability to do complex work); *Lara v. Astrue,* 305 F. App'x 324, 326 (9th Cir. 2008) (holding that plaintiff who was able to perform simple repetitive tasks was capable of doing work at reasoning level two); *Hackett v. Barnhart,* 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that "level two reasoning appears more consistent with [p]laintiff's RFC" of "simple and routine work tasks").

9

2000 WL 1898704 (Dec. 4, 2000) (requiring the ALJ to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the *Dictionary of Occupational Titles*").

Moreover, several published and unpublished opinions of the Eleventh Circuit hold that when a possible conflict exists between a VE's testimony and the DOT that is not apparent and an ALJ relies on a VE's testimony, if after inquiry, the vocational expert testifies that no conflict exists between his or her testimony and the definitions in the DOT, then an ALJ may rely on the vocational expert's testimony. *See Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999); *Miller*, 246 F. App'x at 662; *Hurtado*, 425 F. App'x at 796; and *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012). Thus, because the ALJ asked if there was a conflict and the VE responded that there was not, there was no apparent conflict for the ALJ to further investigate and ALJ did not err in relying on the VE's testimony.

In this case, the VE relied on the DOT to determine available jobs in response to the ALJ's hypothetical containing Plaintiff's impairments and limitations. At the hearing, Plaintiff did not object or present evidence controverting the VE's testimony that she could perform the jobs of marker, router, or dietary aide. The ALJ relied on the statements by the VE to determine that Plaintiff was able to perform jobs listed by the VE. Plaintiff failed to show that there was an apparent conflict that would require the ALJ to investigate further. Absent an apparent conflict, the ALJ met his duty to inquire of the VE as to whether a conflict existed and, when the VE testified that his opinion was based on the DOT, the ALJ had no further duty to investigate any conflict with the DOT. The Court finds that the ALJ did not err in relying on the VE's opinion and, thus, the ALJ's decision is supported by substantial evidence.

### B. Whether the ALJ properly considered Plaintiff's obesity in determining her work capacity

Next, Plaintiff contends that the ALJ failed to consider Plaintiff's impairment of obesity and the impact of that condition in assessing Plaintiff's ability to work. (Doc. 19 at 11). Plaintiff argues that, when viewed in combination with her other impairments, Plaintiff's obesity results in additional limitations in her ability to perform exertional activities such as standing, sitting, walking, lifting and carrying. *Id*. Furthermore, Plaintiff contends that the ALJ relied on the medical opinions that do not account for her weight gain in assessing her residual functioning capacity and, thus, the RFC "does not properly account for Plaintiff's obesity." (*Id.* at 13). Moreover, since the RFC does not account for Plaintiff's obesity, Plaintiff argues "the denial of the claim based upon the VE's testimony is not supported by substantial evidence." (*Id.*).

The Commissioner responds that the ALJ properly evaluated Plaintiff's obesity in accordance with SSR 02-1p. (Doc. 22 at 7-8). Specifically, the Commissioner contends the ALJ found that Plaintiff's severe impairments included obesity and referenced SSR 02-1p when he found that Plaintiff could perform a significant range of light work. (*Id.* at 8; Tr. at 14-19). The Commissioner contends that "Plaintiff's obesity, singly or in combination with her other impairments, did not prevent her from performing a significant range of light work, and Plaintiff failed to prove that her obesity would have prevented her from performing the light exertional jobs identified by the VE." (*Id.* at 8-9).

An ALJ must consider obesity as an impairment when evaluating a claimant's disability. *See* SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2000). Even though it is the ALJ's responsibility to consider obesity as a medically determinable impairment, the burden is on Plaintiff to establish that her obesity results in functional limitations and that she is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1512(a), (c) (2016) (instructing claimant that

11

the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985).

When the record reflects that an ALJ considered a plaintiff's obesity and made specific reference to SSR 02-1p, a plaintiff's argument that an ALJ failed to consider obesity is not supported by the record. *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009). Here, the ALJ reviewed evidence from a number of sources regarding Plaintiff's obesity and considered her obesity in the context of her other health problems. (*See* Tr. at 16, 19-20). Specifically, the ALJ found obesity to be a severe impairment at step two of the sequential evaluation, evaluated obesity pursuant to SSR 02-1p, and stated, "the undersigned has fully considered obesity in the context of the overall record evidence in making this decision." (*Id.* at 16). Further, the ALJ found, "[e]xacerbating the claimant's musculoskeletal pain is her obesity. The claimant is five feet, four inches tall and weighs approximately 217 pounds giving her a BMI of 37.26 (Exhibit 26F/3)." (*Id.* at 19). Thus, the ALJ considered Plaintiff's obesity, made specific reference to SSR 02-1p, and determined that Plaintiff's obesity did not cause additional limitations other than those limitations included in Plaintiff's RFC. In addition, Plaintiff failed to cite to any evidence of record that shows that obesity contributes to additional functional limitations not included in Plaintiff's RFC. Plaintiff merely argues that her obesity "results in additional limitations in her ability to perform exertional activities such as standing, sitting, walking, lifting, and carrying" without any citation to medical evidence that supports such a

statement. (Doc. 19 at 12). This statement alone is insufficient. Thus, the Court finds that the ALJ's determination as to obesity is supported by substantial evidence.[5]

### C. Whether the ALJ's credibility assessment is supported by substantial evidence

The final issue raised by Plaintiff concerns the ALJ's assessment of Plaintiff's credibility. (Doc. 19 at 13). Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence because: (1) the ALJ improperly required objective evidence to substantiate Plaintiff's subjective pain level; (2) the ALJ penalized Plaintiff for being unable to afford additional treatment; (3) the ALJ wrongly penalized plaintiff for not appearing to be in pain or discomfort at hearing. (*Id.* at 13-15).

#### 1. Whether the ALJ erred in requiring objective evidence to substantiate Plaintiff's subjective pain level

Initially, Plaintiff claims that the ALJ erred in requiring some objective evidence to substantiate Plaintiff's pain level. (*Id.* at 15). Plaintiff contends it is improper for an ALJ to require a plaintiff to show a level of objective medical findings to support the level of pain because objective findings do not provide a reliable index to accurately evaluate pain level. (*Id.*).

The Commissioner responds that "the ALJ properly considered Plaintiff's subjective complaints of disabling systems, together with the other evidence, in evaluating her claim." (Doc. 22 at 9). The Commissioner asserts that substantial evidence supports the ALJ's

---

[5] Plaintiff also raises the issue that because the RFC does not properly account for Plaintiff's obesity, the hypothetical question to the VE did not comprise all of Plaintiff's impairments and, therefore, did not constitute substantial evidence. (Doc. 19 at 13). An ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Based upon the Court finding the ALJ's determination as to obesity is supported by substantial evidence, the ALJ did not err in failing to include further limitations in the RFC and did not err in the hypothetical posed to the VE.

13

determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely credible. (*Id*. at 10).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, in reviewing credibility, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated

credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In this case, the ALJ found Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, but Plaintiff's subjective complaints were not entirely credible. (Tr. at 18). The ALJ concluded that the "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.*).

The Court finds substantial evidence supports the ALJ's decision because the ALJ clearly articulated the reasons for his credibility finding, relying on objective medical examinations and consultations, Plaintiff's treatment records, and Plaintiff's acknowledged daily activities. (*Id.* at 18-22). In support of his credibility finding, the ALJ cited multiple objective medical examinations that conflict with Plaintiff's subjective complaints of pain. First, the ALJ cited Plaintiff's 2012 medical exam, in which Dr. Rabinowitz stated, the "musculoskeletal examination was somewhat difficult to perform with the patient resisting range of motion testing in multiple areas in spite of the absence of objective findings." (*Id.* at 19, 391). Second, the ALJ cited Plaintiff's August 2013 examination in which her musculoskeletal exam was "normal" and "overall negative" despite Plaintiff reporting significant neck and back pain. (*Id.* at 19, 429). Third, the ALJ cited Plaintiff's February 2014 physical exam, in which Plaintiff complained of debilitating back pain. (*Id.* 19, 573). The exam, however, showed no abnormalities of the lumbar spine, cervical spine or thoracic spine. (*Id.*). Fourth, the ALJ cited Plaintiff's musculoskeletal exam from January 2015, in which Plaintiff demonstrated a normal range of motion and exhibited no tenderness. (*Id.* at 19-20, 653). Finally, the ALJ noted none of Plaintiff's treating physicians recommended any surgical treatment, Plaintiff has never received

spinal steroid injections, and she does not use a cane, crutches, walker, wheelchair, or braces. (*Id.* at 19-20). Thus, the ALJ concluded that Plaintiff's "subjective allegations of pain are entirely inconsistent with objective findings" (*Id.* at 20). The Court finds that the ALJ supported his credibility finding by citing to medical evidence of record to support his decision.

Further, the Court notes that the ALJ gave several other reasons for discrediting Plaintiff including Plaintiff's lack of compliance with treatment. (*Id.* at 19-21). The ALJ concluded that "if the claimant's condition were as limiting as she alleges, the record would contain evidence of more significant treatment." (*Id.* at 20).

Moreover, the ALJ found Plaintiff's own statements to be inconsistent regarding her daily activities, and the ALJ found these inconsistencies further eroded her credibility. (*Id.* at 21). The ALJ noted that Plaintiff reported significant problems with standing and walking, yet she also reported that she takes daily walks. (*Id.*). The ALJ also noted that if Plaintiff's impairments were as limiting as she claimed, she would not be engaging in physical activities such as walking and bowling. (*Id.*).

The Court finds the ALJ considered not only the objective medical evidence, but also Plaintiff's subjective reports to determine that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. (*Id.* at 22). Therefore, the Court finds that the ALJ's determination as to credibility is supported by substantial evidence.

### 2. Penalizing Plaintiff for inability to afford treatment

The next issue Plaintiff raises concerns her assertion that "the ALJ ignored Plaintiff's extreme poverty in assessing her compliance with treatment." (Doc. 19 at 16). In support, Plaintiff notes she was homeless and living out of her car for a period of time. (*Id.* 19 at 15; Tr. at 416, 531). Plaintiff argues the ALJ did not consider the fact that Plaintiff's dire financial

situation made it impossible for her to comply with treatment and, thus, Plaintiff was improperly penalized for her in ability to afford treatment. (Doc. 19 at 15). The Commissioner responds that Plaintiff's medical records indicate Plaintiff's lack of treatment and medication was due to the fact that her conditions were not as severe as she alleged and not due to a lack of finances. (Doc. 22 at 13).

The Eleventh Circuit has held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," but "poverty excuses noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). When an ALJ relies on noncompliance with prescribed medical treatment as the "sole ground for the denial of disability benefits," and the record contains evidence that a plaintiff was unable to afford the prescribed medical treatment, then the ALJ must determine whether a plaintiff could afford the prescribed medical treatment. *Id.*

If a court determines that the failure to follow prescribed medical treatment is not one of the "principal factors in the ALJ's decision," then the ALJ is not required to delve into a plaintiff's ability to pay, and this failure is not reversible error. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011). If the failure to follow prescribed medical treatment is a substantial factor in an administrative law judge's decision to discredit a plaintiff's credibility, then the ALJ should inquire further as to whether a plaintiff was able to afford the prescribed medical treatment before holding noncompliance against a plaintiff. *Moffatt v. Comm'r of Soc. Sec.*, No. 8:13-CV-2853-T-36EAJ, 2015 WL 1038014, at *4 (M.D. Fla. Mar. 10, 2015).

Here, the ALJ mentioned that Plaintiff had been noncompliant with her treatment. (Tr. at 20). The ALJ noted that during Plaintiff's November 2014 psychiatric hospitalization, Plaintiff "refused to take prescribed medication citing that she could not afford once discharged and did

not want to 'crash.' The undersigned notes that if the claimant's symptoms were as limiting as the claimant alleges, she would follow recommended treatment." (*Id.*). The ALJ determined that the record established that Plaintiff's mental impairments were well controlled when she was compliant with medication and treatment. (*Id.* at 20-21).

The ALJ considered Plaintiff's non-compliance with treatment and medications as one factor in determining that Plaintiff was not entirely credible and, thus, not disabled. The ALJ did not rely solely or primarily on Plaintiff's noncompliance with treatment in assessing the credibility of her subjective complaints. The ALJ clearly states he gave significant weight to the State Agency Medical Consultant, the State Agency Psychological Consultant, and the opinion of Dr. Kelly, none of whom even mention Plaintiff's non-compliance with treatment. (*Id.* at 21, 22, 67, 81, 94, 355). Plaintiff's non-compliance with treatment was not the only factor the ALJ considered but rather one factor considered amongst many. Thus, the ALJ was not required to determine whether Plaintiff could afford her prescribed medical treatment. *See Ellison*, 355 F.3d at 1275.

Accordingly, the Court finds that the ALJ did not err when determining Plaintiff's credibility because his decision did not rely solely or primarily on Plaintiff's non-compliance with treatment. Non-compliance was only one of many factors that the ALJ considered. Therefore, the Court finds substantial evidence supports the ALJ's decision on this issue.

### 3. Whether the ALJ engaged in "sit and squirm" jurisprudence

Finally, Plaintiff argues that the ALJ engaged in "sit and squirm" jurisprudence by penalizing Plaintiff for not appearing to be in pain during the hearing. (Doc. 19 at 14). Plaintiff contends that the ALJ discredited Plaintiff because she was able to sit for the entire one-hour hearing. (*Id.*). Plaintiff argues that the fact that she did not react in the manner expected by the

ALJ does not establish she was not in pain and "the ALJ's desire for Plaintiff to grimace or otherwise appear in obvious pain is exactly the type of sit and squirm jurisprudence that the Court has sought to avoid." (*Id*.).

In response, the Commissioner argues that the ALJ properly considered Plaintiff's activities, including her demeanor at the hearing in evaluating Plaintiff's claim. (Doc. 22 at 12). The Commissioner further argues that Eleventh Circuit case law and SSR 96-7p, "allow an ALJ to consider his or her observations of the claimant in assessing the credibility of the claimant's allegations." (*Id*. at 12-13). The Commissioner contends that the ALJ properly considered claimant's appearance and demeanor at the hearing along with objective examination results in assessing Plaintiff's credibility. (*Id*. at 13). Thus, the Commissioner argues, substantial evidence from the record supports the ALJ's credibility finding. (*Id*.).

The concept of "sit and squirm" jurisprudence denotes that an ALJ's denial of a claim is based on the claimant's failure to exhibit certain traits that the ALJ has subjectively determined would exist if the claimant were truly disabled. *Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *12 (N.D. Ala. Mar. 31, 2017) (citing *Freeman v. Schweiker*, 681 F.2d 727, at 731 (11th Cir. 1982)). Even though "sit and "squirm" jurisprudence is prohibited, an ALJ is permitted to consider a claimant's appearance and demeanor at a hearing. *Id.* (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Norris v. Heckler*, 760 F.2d 1154, 1157-58 (11th Cir. 1985)); *see also* 20 C.F.R. § 416.929(c)(3)(vii), (c)(4); SSR 96-7p, 1996 WL 374186, at *5, *superseded by* SSR 16-3p.

In accordance with Eleventh Circuit case law and SSR 96-7p, the ALJ properly considered Plaintiff's demeanor and disposition at the hearing. The ALJ clearly articulated that "while alone not dispositive of her [claim], the claimant testified that when she sits for a long

period her back and neck begin to hurt. However, the undersigned notes that she sat for the entire one-hour hearing. She did not request to stand up or change positions. She did not appear to be in distress. She was not grimacing or in obvious pain." (Tr. at 21). Thus, it is clear from the ALJ's own words that he did not rely solely on his observations of Plaintiff at the hearing to determine Plaintiff's credibility. It is apparent that the ALJ relied upon many factors, including objective medical evidence, Plaintiff's purported daily activities, and observations about Plaintiff's appearance at the hearing, in evaluating claimant's credibility. Accordingly, the Court finds that the decision of the ALJ as to Plaintiff's credibility is supported by substantial evidence.

### III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

Accordingly it is hereby **ORDERED**:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g). The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 28, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties